J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
kwasniewski@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
STEEPED, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

STEEPED, INC., a Delaware corporation doing business as STEEPED COFFEE,

Plaintiff,

v.

NUZEE, INC., a Nevada corporation doing business as COFFEE BLENDERS,

Defendant.

Case No: 4:19-cv-03763-HSG

**PLAINTIFF STEEPED, INC.'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION**

**Date:** October 15, 2020
**Time:** 2:00 p.m.
**Judge:** Hon. Haywood S. Gilliam, Jr.
**Location:** Courtroom 2 – 4th Fl.

**Compl. Filed:** June 27, 2019
**Trial Date:** January 19, 2021

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

FACTS ..... 3

A. The STEEPED COFFEE Mark ..... 3

ARGUMENT ..... 6

I. DEFENDANT INFRINGED STEEPED'S MARK AND CAUSED ACTUAL CONFUSION ..... 7

II. STEEPED COFFEE IS A VALID AND PROTECTABLE TRADEMARK ..... 7

A. STEEPED COFFEE Is a Suggestive Mark ..... 7

B. STEEPED COFFEE Has a Secondary Meaning ..... 9

III. DEFENDANT DID NOT ENGAGE IN FAIR USE ..... 11

IV. DEFENDANT'S INFRINGEMENT WAS WILLFUL ..... 12

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Airco, Inc. v. Air Prods. & Chems., Inc.*,
196 U.S.P.Q. 832 (TTAB 1977) ........ 8
*Am. Sci. Chem., Inc. v. Am. Hosp. Supply Corp.*,
690 F.2d 791 (9th Cir. 1982) ........ 10
*Brookfield Commc'ns, Inc. v. West Coast Ent't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ........ 7
*Brother Records, Inc. v. Jardine*,
318 F.3d 900 (9th Cir. 2003) ........ passim
*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ........ 11
*Carter-Wallace, Inc. v. Proctor & Gamble Co.*,
434 F.2d 794 (9th Cir. 1970) ........ 10
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 6
*Entrepeneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) ........ 6
*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
612 F.2d 1018 (7th Cir. Cir. 1979)........ 10
*In re Bose Corp.*,
216 U.S.P.Q. 1001 (TTAB 1983) ........ 10
*In re Flex-O-Glass, Inc.*,
194 U.S.P.Q. 203 (TTAB 1977) ........ 10
*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
184 F.3d 1107 (9th Cir. 1999) ........ 6
*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
150 F.3d 1042 (9th Cir. 1998) ........ 7, 8
*Lindy Pen Co. v. Bic Pen Corp.*,
725 F.2d........ 11
982 F.2d 1400 (9th Cir. 1993) ........ 12
*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*,
687 F. Supp. 754 (E.D.N.Y. 1988)........ 9
*O'Rourke v. Central City Soap Co.*,
26 F. 576 (C.C.E.D. Mich. 1885)........ 8
*Perfumebay.com Inc. v. eBay, Inc.*,
506 F.3d 1165 (9th Cir. 2007) ........ 7
*Quiksilver, Inc. v. Kymsta Corp.*,
466 F.3d 749 (9th Cir. 2006) ........ 9
*Rodeo Collection, Ltd. v. W. Seventh*,
812 F.2d 1215 (9th Cir. 1987) ........ 8
*Rudolph Int'l, Inc. v. Realys, Inc.*,
482 F.3d 1195 (9th Cir. 2007) ........ 9

*Stamps v. Golden Gate S.S. Corp.*, 14-cv-05587-HSG,
2016 WL 879660 (N.D. Cal. Mar. 8, 2016) ........ 6
*Stewart Paint Mfg. v. United Hardware Distributing Co.*,
253 F.2d 568 (8th Cir. 1958) ........ 10
*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir. 2002) ........ 6, 7
*Townsend v. Monster Bev. Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) ........ 12
*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d ........ 10
911 F.2d 363 (9th Cir. 1990) ........ 11
*Zobmondo Ent't, LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) ........ 8

Rules

Fed. R. Civ. P. 56(a) ........ 6

Plaintiff Steeped, Inc. ("Steeped") respectfully submits this Opposition to Defendant's Motion for Summary Judgment ("Motion").

**INTRODUCTION**

Steeped developed the first single-serve coffee product that is sustainable, lightweight, long-lasting, and can make delicious coffee anywhere without a machine with just hot water and a cup. Because this was a novel product category, Steeped spent substantial sums to market its goods, all of which are sold with the trademark "STEEPED COFFEE". Thanks to these marketing efforts, Steeped's products are now sold across the country, and the STEEPED COFFEE mark is now widely recognized as identifying high quality, convenient, and sustainable single-serve coffee products.

Defendant's Motion concedes that Defendants infringed Steeped's mark. Indeed, Defendants acknowledge that they were aware of Steeped and the STEEPED COFFEE mark when they decided to launch their copycat "Steep Coffee" product. (Doc. 50-2 at 5.) Defendant does not dispute that STEEPED COFFEE and "Steep Coffee" are confusingly similar, or that customers were actually confused by Defendant's infringement.

Instead, Defendant chiefly argues that it is not liable for its conceded infringement because STEEPED COFFEE is a purely descriptive and not protectable mark. But as the cases on which Defendant relies make plain, granting summary judgment on this highly factual issue is rarely appropriate. *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 903 (9th Cir. 2003) (cited in Mot. at 9.) Here, at least three factual issues preclude granting summary judgment. ***First,*** STEEPED COFFEE is suggestive, not purely descriptive, as Defendant contends. Steeped's products are not literally steeped when consumers purchase them. A consumer must employ at least some imagination to understand that coffee—which is otherwise most commonly sold as whole or ground beans, or in specially prepared pods for single-serve machines—can be sold in individual pouches and prepared simply by placing these pouches in hot water, unlike any other coffee preparation currently available. Defendant's own discussion of the meaning of the word "steep"

only reinforces that this term is rarely used in conjunction with coffee. (Doc. 50-4[1] at 12 (listing as examples of "steep" in a sentence "*Steep* the tea for three minutes"; "The tea *steeped* for five minutes); Doc. 50-2 at 4 (steeping is a "brewing process" that is "used for tea"). Coffee, by contrast, is typically brewed, infused, or percolated. Combining "coffee" and "steeped" creates a mark that suggests a unique coffee experience without literally describing how Steeped's products work.

***Second***, Defendant ignores the allegations and evidence already in the record that STEEPED COFFEE, through its exclusive use by Steeped, has acquired a secondary meaning associating the mark with Steeped. (*See* Doc. 40 at 5 (Order Denying Motion to Dismiss).) With this Opposition, Steeped submits further testimony and other evidence from its customers showing that the public now associates STEEPED COFFEE with Steeped alone. Defendant does not address, much less dispute, that STEEPED COFFEE has acquired secondary meaning. This is fatal to its motion.

***Third*****,** even if Defendant has ceased its infringement, its ongoing efforts to have the STEEPED COFFEE mark deemed purely descriptive and thus unprotectable suggest it intends to resume its infringement at some point in the future. Defendant's rebranding efforts do not preclude Steeped from obtaining an injunction to ensure Defendant does not resume its use of infringing marks.

***Fourth*****,** Defendant cannot avail itself of the fair use doctrine. In its motion, Defendant misleadingly suggests that the only use of the term "steep" on its packaging was in the product instructions or descriptions. (Mot. at 9.) Defendant virtually ignores that its packaging also used terms like "Steeped to Perfection" (itself a trademark first used by Steeped) and "Steep Pouches," or that it referred to its product as "Steep Coffee," "Steep Bag Single Serve Coffee," or "Steep Bag Coffee" in numerous other marketing materials. Nor are these phrases used in good faith; after Steeped filed this action, Defendant rebranded its product as "T-Bag Coffee," which demonstrates

---

[1] Defendant's Motion is accompanied by two declarations and nine exhibits, which were filed as four combined documents with multiple page numbering systems. (Docs. 50-2–50-5.) For ease and consistency of reference, Steeped cites to these documents by the ECF-generated document and page numbers.

its use of "Steep Coffee," and a multitude of similarly confusing marks, was never necessary to describe the product.

For the same reasons, Defendant's half-hearted argument that its infringement was not willful also fails. Defendant acknowledges it was aware of Steeped and its STEEPED COFFEE mark, but elected to proceed with its infringing "Steep Coffee" product anyway. Defendant continued to infringe despite its own counsel's recommendation that phrases like "Steep Pouches" would be infringing. Defendant even continued to market its product as "Steep Coffee" after Steeped filed this action. (Wilbur Decl. ¶ 15.) There is ample evidence of willful infringement here.

For these reasons, and the reasons below, Defendant's motion should be denied.

**FACTS**

**A. The STEEPED COFFEE Mark**

Steeped was founded in 2015 by Josh Wilbur, who set out to develop a single-serve coffee product that could produce delicious coffee anywhere, without the need for special equipment or non-compostable pods. (Wilbur Decl. ¶ 2.) To distinguish them from other coffee products, Steeped uses the mark STEEPED COFFEE on all of its products and for all products produced for all of Steeped's Licensed Partners alike:







(*Id.* ¶ 3.)

Steeped also uses the STEEPED COFFEE mark on a variety of coffee related merchandise, such as coffee mugs:

(*Id.* ¶ 3.) The STEEPED COFFEE mark is also listed on the Supplemental Federal Register. (Wilbur Decl. ¶ 4.)

Because Steeped did not just create a novel product, but an entirely new product category, Steeped has spent more than $3,000,000 bringing its products and co-packing services to market with the STEEPED COFFEE mark. (Wilbur Decl. ¶ 6.) To cite just a few examples, Steeped has distributed products through subscription box services to over 80,000 consumers; distributed coffee packs to the roughly 15,000 participants in the 2019 Wharf to Wharf race; cultivated an email subscriber list of 35,000 people; amassed over 30,000 followers on social media; attended and won awards at multiple Coffee Industry trade shows with tens of thousands of attendees; and advertised its products to millions of more people online. (Wilbur Decl. ¶ 6.)

In addition to selling its products directly, Steeped also serves as a co-branded co-packer for over 160 licensed partners, who each individually sell and market Steeped-branded products bearing the STEEPED COFFEE mark across the country to tens of millions of people. (*Id.* ¶ 8.)

Prior to Defendant's infringement, Steeped was the exclusive owner and licensor of the STEEPED COFFEE mark. Steeped's marketing efforts have thus led consumers to understand the

STEEPED COFFEE mark means high-quality, sustainable single-serve coffee products made exclusively by Steeped. This is reflected by countless customer testimonials and social media posts associating STEEPED COFFEE with Steeped's products. (Wilbur Decl. Exs. 2, 5.)

Several of Steeped's customers have also submitted testimony in support of this Opposition, explaining that they rely on the STEEPED COFFEE mark to distinguish Steeped's products from others on the marketplace, and that they associate this mark exclusively with Steeped's products. (Decls. of Mike Ralls, Jared Truby, Remington Hotchkis, Luigi di Ruocco, and Sam LaRobardiere.)

In April 2019, Steeped won the Best New Product Award for packaging from the Specialty Coffee Expo, in Boston Massachusetts; a coffee industry trade show at which the Defendant was also an exhibitor. (Wilbur Dec. ¶ 11.) Soon thereafter, Steeped learned that Defendant was offering for sale a copycat product marketed as "Steep Coffee" and had started offering copycat co-packing services. (Wilbur Dec. ¶ 11.) Defendant also began advertising their "Steep Coffee" online and via social media. (*Id.* ¶ 12.) Actual confusion immediately resulted from Defendant's infringement, and several Steeped customers contacted Steeped to inquire as to why Steeped was pitching the product again after they were already a Steeped customer, only to find out that it was Defendant selling a copycat product. (*Id.* ¶ 13.)

Steeped promptly sent Defendant a cease and desist letter, but Defendant refused to cease its infringement. Steeped thus initiated this action. (Doc. 1.) Defendant moved to dismiss, arguing in part that it had ceased infringement. In fact, this was untrue—Defendant continued to market its product with the "Steep Coffee" mark for months, including even after Steeped highlighted this ongoing infringement in its opposition to Defendants' motion to dismiss. (Doc. 26 at 1-2; Wilbur Decl. ¶ 15.) Indeed, at least as recently as January 21, 2020, Defendant's Vice President of Sales continued to blatantly advertise Defendant's product as "Steep Coffee" on his LinkedIn page, with posts still live as of September 16, 2020.

Defendant used its infringing mark not only to market its own products, but also to sell its services as a co-packer for other coffee companies. For example, through discovery, Steeped learned that Defendant served as a co-packer for Cult Coffee Co., which briefly sold a product

marked as "Steeped Coffee." (Kwasniewski Decl. ¶ 2.) Other communications produced by Defendant in this matter show that it attempted to sell its co-packing services to a number of other coffee companies using its infringing mark. (*Id.* ¶ 3.)

On or about March, 2020, Defendant announced that it was rebranding its "Steep Coffee" product as "T-Bag coffee." (Wilbur Decl. ¶ 16.)

## ARGUMENT

Summary judgment is only "proper where the pleadings, discovery and affidavits show that there is no 'genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law.'" *Stamps v. Golden Gate S.S. Corp.*, 14-cv-05587-HSG, 2016 WL 879660 *1 (N.D. Cal. Mar. 8, 2016) (citing Fed. R. Civ. P. 56(a).) "The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits, which demonstrate the absence of a genuine issue of material fact." *Stamps*, 2016 WL 879660 *1 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepeneur Media, Inc. v. Smith*, 279 F.3d 1135, 1139-40 (9th Cir. 2002) (quoting *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)). "Therefore, a district court may grant summary judgment … only if no genuine issue exists regarding likelihood of confusion." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).

Here, Defendant's motion fails to show no genuine issue exists regarding likelihood of confusion. Defendant concedes that its "Steep Coffee" and similar phrases on its packaging and marketing were likely to confuse consumers. Defendant does not dispute that some of Steeped's customers were actually confused. Nor has Defendant shown that there is no genuine dispute of material fact regarding the protectability of the STEEPED COFFEE mark, because Defendant has failed to show that it is purely descriptive and ignores the substantial evidence of secondary meaning. Defendant's own evidence establishes that their use of phrases like "Steeped to Perfection" was not fair use. And Defendant's infringement—which persisted long after this lawsuit was filed—is plainly willful.

## I. DEFENDANT INFRINGED STEEPED'S MARK AND CAUSED ACTUAL CONFUSION

Defendant concedes that it knowingly infringed the STEEPED COFFEE mark. Indeed, its own counsel acknowledged that phrases like "Steep Coffee" or the "Steeped Pouches" was infringing. (Doc. 50-2 at 5 ("Counsel advised [Travis Gorney, Defendant's President] that the packaging should be revised to delete [steep and steeped] when referring to the coffee pouches"); Doc. 50-3 at 7 ("[T]he manner in which the word STEEP appears on the front panel of the package would constitute trademark use…. [T]he reference on the front panel does not refer to a method but specifically refers to the pouches or serving coffee bags.").

Defendant also does not dispute that there was actual confusion amongst Steeped's customers following Defendant's launch of its "Steep Coffee" product. (Wilbur Decl. ¶ 13.) This evidence is sufficient to preclude a grant of summary judgment in this trademark dispute. *Thane Int'l*, 305 F.3d at 901.

Defendant's motion is also limited to the terms Defendant used on its product packaging. Defendant does not attempt to defend its use of terms like "Steep Coffee" and "Steep Bag Coffee" in various online advertisements for its products. Defendant's online advertisements are a separate and independent basis for liability. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1175 (9th Cir. 2007) (use of infringing mark in online advertisements can give rise to liability). Defendant also makes no effort to defend its use of infringing marks to sell its co-packing services. This is yet another separate and independent basis for liability. *Brookfield Commc'ns, Inc. v. West Coast Ent't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) (trademarks also protect services). Defendant's motion thus cannot resolve Steeped's claim in this case.

## II. STEEPED COFFEE IS A VALID AND PROTECTABLE TRADEMARK

Defendant also fails to show there is no genuine dispute of material fact regarding whether the STEEPED COFFEE mark is protectable, either because the mark is suggestive or because there is ample evidence the mark has acquired a secondary meaning.

### A. STEEPED COFFEE Is a Suggestive Mark

Trademarks are classified as generic, descriptive, suggestive, arbitrary, or fanciful. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).

Fanciful, arbitrary, or suggestive marks are deemed "inherently distinctive," and are protectable. *Id.* Generic marks, by contrast, are never protectable. *Id.* Descriptive marks are protectable if they have acquired a "secondary meaning," associating it with a particular source. *Id.*

Here, Defendant asserts that Steeped's mark is descriptive, not suggestive. The Ninth Circuit has developed two frameworks for assessing whether a mark is suggestive or descriptive. First, "[i]f a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, then the mark does not *describe* the product's features, but *suggests* them. Such a mark is therefore classified as 'suggestive,' rather than 'descriptive.'" *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). Second, a mark may be deemed descriptive if it would be impossible for a competitor to identify its goods or services without using the trademarked word or phrase. *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987).

Examples include "Air Care" for a service that maintains medical breathing devices, *Airco, Inc. v. Air Prods. & Chems., Inc.*, 196 U.S.P.Q. 832 (TTAB 1977) or "Anti-Washboard" for soap that makes scrubbing unnecessary, *O'Rourke v. Central City Soap Co.*, 26 F. 576 (C.C.E.D. Mich. 1885). By contrast, using a grape leaf on a wine label is simply descriptive or generic, particularly as it is commonly featured on innumerable wine labels. *Kendall-Jackson*, 150 F.3d 1042, 1049.

*Zobmondo Ent't, LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010), relied on by Defendant (Mot. at 7), is on point. There, the Ninth Circuit reversed the district court's grant of summary judgment on the ground that the phrase "Would you rather ….?" was merely descriptive. The Ninth Circuit explained, "We cannot look the entire mark up in a dictionary … one may infer that there is a question, but only imagination can tell us that the question will serve up a bizarre or humorous choice." *Id.* at 1116.

So too here. STEEPED COFFEE is not a defined term; nor does it literally describe the product being sold—the coffee is not steeped in water when consumers purchase it. Rather, it suggests that the coffee may be made in a process similar to tea, complete with single-serve pouches that are individually packaged for freshness. This is far from a common method for making coffee; rather than steeping it, coffee is typically brewed, percolated, or infused.

MERRIAM-WEBSTER DICTIONARY, *Coffee* (defining "coffee" as "a beverage made by percolation, infusion, or decoction from the roasted and ground seeds of a coffee plant"). Consumer must thus exercise some imagination to infer that STEEPED COFFEE means coffee sold in single-serve pouches that can be brewed by placing the pouches directly in hot water. The abundance of alternative terms for describing how coffee is made also makes it easy for competitors to describe their products without using the STEEPED COFFEE mark—for example, Defendant now calls its products "T-Bag Coffee." This case is thus quite different from Defendant's principal authority, which involved products that were quite literally described by the claimed mark. *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1197 (9th Cir. 2007) ("disinfectable" was not a suggestive term because "the nail files at issue here are *literally* disinfected).

The Court is not bound by the Trademark Office's contrary finding, which was issued years ago, before Steeped had an opportunity to develop its product category. *See Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 687 F. Supp. 754, 762 (E.D.N.Y. 1988) (examiner's findings about trademark have no res judicata effect). In finding that the phrase "steeped coffee" was merely descriptive, the examiner relied on then-existing references to that phrase, such as a historic Nordic method for coffeemaking. If anything, these obscure references demonstrate that the phrase "steeped coffee" is not literally descriptive of Steeped's products.

Nor is Steeped's patent application of any relevance. Steeped's mark is the phrase STEEPED COFFEE, which nowhere appears in that application. And the novelty of Steeped's invention only confirms that STEEPED COFFEE is not a commonly used, descriptive term. At a minimum, the factual issues surrounding the classification of the STEEPED COFFEE mark preclude summary judgment.

**B. STEEPED COFFEE Has a Secondary Meaning**

Even if STEEPED COFFEE were purely descriptive, a descriptive mark "can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006). "Secondary meaning is achieved by an association between a name and a source. When this mental recognition occurs among purchasers, the name becomes legally protectable as an identification symbol."

*Transgo*, 768 F.2d at 1015; *Am. Sci. Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 792 (9th Cir. 1982). "Secondary meaning has been defined as *association*, nothing more." *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). "Whether a symbol or device has acquired a secondary meaning is a question of fact." *Transgo*, 768 F.2d at 1015. Courts consider at least four factors in determining whether secondary meaning has been achieved: "(1) whether actual purchase[r]s of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether the use of the claimed trademark has been exclusive." *Transgo*, 768 F. 2d at 1015. Courts have accordingly found secondary meaning where customers testified that they relied on the mark to purchase the products, *Transgo*, 768 F.2d at 1017; or where the plaintiff testified he had marketed the product for years and was the dominant force in the market, *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1020, 1024 (7th Cir. Cir. 1979); or where the plaintiff registered the mark and some customers relied on it, *Stewart Paint Mfg. v. United Hardware Distributing Co.*, 253 F.2d 568, 569-70 (8th Cir. 1958).

Here, with this opposition, Steeped submits declarations from Mike Ralls, Jared Truby, Remington Hotchkis, Luigi di Ruocco, and Sam LaRobardiere, all experienced individuals in the coffee industry. They testify that they and their customers associate the mark STEEPED COFFEE with products made by Steeped, and that they rely on this mark to distinguish Steeped's products from others. Courts have repeatedly found similar evidence to establish secondary meaning. *E.g., In re Bose Corp.*, 216 U.S.P.Q. 1001, 1005 (TTAB 1983), *aff'd*, 772 F.2d 866, 227 U.S.P.Q. 1 (Fed. Cir. 1985) (retailer's statement that he has been in contact with many purchasers of loudspeaker systems of whom a substantial number would recognize the depicted design as originating with applicant competent evidence of secondary meaning); *In re Flex-O-Glass, Inc.*, 194 U.S.P.Q. 203, 206 (TTAB 1977) (finding affidavits that purchasers relied on the mark sufficient to establish secondary meaning).

Additionally, Josh Wilbur, Steeped's founder, testifies to the substantial time and money Steeped has invested in advertising its products across multiple online platforms. This advertising

has reached at least 1.5 million people, and consistently uses the STEEPED COFFEE mark to identify Steeped's products. (Wilbur Decl. ¶ 6.) Further, the STEEPED COFFEE mark, as represented by Steeped's Licensed Partners through Steeped's co-packing services, has exponentially more reach through their collective domestic and international marketing and advertising efforts. Wilbur Decl. ¶ 8.)

Mr. Wilbur further confirms that, until Defendant's infringement, Steeped was the only company using the STEEPED COFFEE mark—indeed, from its founding until 2019, Steeped was the only company making this specific category of product.

Steeped has thus provided evidence that consumers rely on the STEEPED COFFEE mark, that this reliance is the result of Steeped's extensive advertising, and that Steeped was the exclusive user of the STEEPED COFFEE mark for years before Defendant introduced its copycat product. This evidence shows that STEEPED COFFEE has a secondary meaning in the minds of a significant number of consumers. Summary judgment on this issue is thus not appropriate.

## III. DEFENDANT DID NOT ENGAGE IN FAIR USE

Defendant claims its use of terms "steep" and "steeped" was fair use because these terms "describe features of the product." (Mot. at 9.) Defendant's fair use defense fails for the simple reason that, as noted above, there was actual consumer confusion about the origin of the product. Under controlling Ninth Circuit law, this fact is fatal to a fair use defense. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) ("In our Circuit, the classic fair use defense is not available if there is a likelihood of customer confusion as to the origin of the product."); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 n.2 (9th Cir. 1990) (classic fair use defense available only so long as such use does not lead to customer confusion as to the source of the goods or services); *Lindy Pen*, 725 F.2d at 1248 (same) (cited in Mot. at 9).

Even if there were no evidence of actual confusion, Defendant's Motion fails to come forward with evidence satisfying the elements of fair use. Those elements are: "1. Defendant's use of the term is not as a trademark or service mark; 2. Defendant uses the term 'fairly and in good faith'; and 3. Defendant uses the term only to describe its goods or services." *Cairns*, 292 F.3d at 1151. Here, Defendant did not merely use the word "steep" in product usage instructions; it also

called its product "Steep Coffee," described the individual product units as "Steep Pouches," and used the tagline "Steeped to Perfection". It did so despite its own counsel advising against use of terms like "Steep Pouches," on the specific ground that this would not be fair use. (Doc. 50-2 at 5.) The evidence in the record thus precludes a grant of summary judgment on the question of fair use.

## IV. DEFENDANT'S INFRINGEMENT WAS WILLFUL

Defendant contends there was no willful infringement because it only intended to use the words "steep" and "steeped" to describe a method for brewing coffee. (Mot. at 10.) Willful infringement exists where the infringement is "calculated to exploit the advantage of an established mark" or where the defendant is "attempting to gain the value of an established name of another." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). That is precisely what happened here. Defendant used infringing terms like "Steep Coffee" and "Steep Pouch" on its packaging and in other advertisements *against* its own counsel's advice, after receiving a cease and desist letter from Steeped, and *after the filing of this action*. Defendant does not even address, much less attempt to excuse, this conduct, which is plainly willful, and cannot do so for the first time on reply.[2] *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010 (C.D. Cal. 2018) ("New evidence submitted as party of a reply is improper because it does not allow the defendant an adequate opportunity to respond." (quotation omitted)).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Dated: September 17, 2020

BRAUNHAGEY & BORDEN LLP

By: */s/ David H. Kwasniewski*
David H. Kwasniewski

Attorneys for Plaintiff Steeped, Inc.

---

[2] Defendant has previously claimed that its post-filing use of the infringing mark on its packaging was inadvertent, but this does not explain why it persisted in using this mark in online advertisements until at least January 2020.